and McHenry Township. This honorable appellate court for the second district is now open. The Honorable Justice Catherine is enough presiding along with justices and be Jorgensen and Liam C. Brennan. The case is number two, 20. Oh, four seven, eight McHenry Township plaintiff appellant. Versus County of McHenry at all defendants Appleys. Arguing for the appellant, Robert T. Hanlon. Arguing for the Appleys Carla and Wyckoff. Thank you. Good morning. Please go ahead. Good morning. Good morning. I appreciate the time that the court has provided to me. For today's argument. This case actually isn't a one in which I think I'll use up all of my time this morning. I think that. I'll probably be a lot quicker. I'll likely be a lot quicker. With respect to my direct presentation. In essence, Mr. Terrio. Took the proposition that. A similar question that had been placed on the ballot in a prior election was. In essence, the same. Because it produced a similar result. And when I say similar. If the measure had been approved, it would have been. The dissolution of, you know, this. Entity. And the difficulty. That I think is apparent is, is that. The clerk has a job and his job. Is to look to see whether or not. The. Request to have a play question placed in the ballot complies with the statute on its face. And I think if we look at the. Proposition that. Ultimately proposed to be placed on the ballot by the McHenry county board. It complied with the statute. So the question then became. Should the clerk have looked beyond the face of that. Petition in order to ascertain whether or not, excuse me. Whether or not to. You know, place the ballot. On the. Election. And what he does is he goes to a prior. Petition that was circulated by. Voters not by the board, but by voters. And he goes to a prior petition that was circulated by. Voters. In essence is a preemptive strike. For lack of a better term. To say, well, gee, this issue was. You know, previously. Advanced. However. The. It was his application of the rule that was in air. First, the two propositions are not the same. The court below. Looked at that issue. And I think most of the opinion of the court below said. Was that I was all the way up until we got to. What the court thought was an absurd decision. So I want to focus on this idea. Of the court. You know, raising a. On arguments. That. Applying a law would result in something absurd. And it's not absurd because of this. The statute. That was created by the legislature. It was created in the context of knowing what the general election statutes are. And so when the legislature passed. That's that. The goal and the objective of it. Was to make it easier to get a proposition on the ballot to. To dissolve the township. In this particular case. The legislature. The legislature. Set forth a form that they wanted to have used. That form says. That we're going to have a specific date at a specific point in time. And the legislature. If we assume that they know full well about the 23 month rule. In essence, designed into the statute. A way that it would never be the same. That the. The. Way to ensure that it would not be the same. Would be to create a statutory construct. That would. Recognize that the 23 month rule existed. And therefore by making it different. So that no matter what happens, that there will be access to the ballot. To allow the voters to determine whether or not. That is in essence, the crux of the cases before you, because if the court looks at. The language and says it's. It's the same. Well, then I guess it's game set match against. My client's proposition. However. Of course says objectively. They are not the same because they have different dates. Now those different dates, you know, Dates are always important. Contracts in.  I don't think the court will do. Just about anything that lawyers do. Because time is always. Something to be considered. One of the things I pointed out to the court below. Was that the. Particular voter may look at a thing because we're saying. Should this be dissolved this year? Well, maybe the voter says at that point in time, no, I don't want it to be. I don't want it to be dissolved this year. I want to, you know, get it. Keep on going. Till next year for whatever the reason, whatever. The. Mr. Hanlon may. May I interrupt? And I apologize. Sure. The, the date, the effective date. If a random like this passes is governed by the township. Correct. 24. 20. Basically tells you what the date's going to be. Right. Within 90 days. Of the date of the, of the proposition sent to the orders. Could you ever have a situation where. Two of the same referenda or referendums. Are on ballots where they would have six and successive. Election periods where they would have the same. Date that would be impossible. Correct. Effective date. Yeah, I think that's the legislative construct of the statute was to. Eliminate the sameness. But. The day, the effective date. That's a function of statute, depending on which election cycle. The referendum is presented and voted on. If you could never have a situation where. They would have the same date. Doesn't it? Render the 23 month period and nullity in effect. Well, I think that the. It's clear that when the legislature passed the statute at issue, The township code. To allow for the dissolution of the townships. They were fully aware that the election code existed in the election code. Had that 23 month provision in it. And what I was getting at earlier is, is that there's two ways to look at this. You can look at it and say that the legislature. Design the statutes pointedly so that it would never be the same. So that by including those dates, specific issues. It would be in compliance with the election code. And that the, the look would be uniform because. It would encourage voters when they decide to terminate a township. That you wouldn't have a situation where they were the same. And therefore. By passing that law in that fashion. They recognized that it was important to construct it in such a way. That they would not be the same. So, so, so, so. But what I'm hearing in your question is. Would there be a way to. Constructed. To either circumvent that legislative intent, because look at the legislative intent. From its writing. The writing says. It'll be in this form. And this form is going to include these terms. And so. So that's the first question. My question, perhaps I was an artful is this. If you can never have. Successive referendums that are identical. With the same effective date because of 27, 20. Then 28, seven, the 23 month period. Prohibition is completely irrelevant. It's a nullity because it could never happen. Under you, your construct that the effective date. That the 23 month rule. Changes. And makes it not the same. Yeah. Yes. It would be my contention that the legislative intent. By designing the statute in a way that they did. Is to obviate and eliminate. The. This idea of the sameness of the 23 month rule. Thank you. Okay. Okay. And so when I was. Articulating. This issue of sameness, and this goes to some of the questions that the court. You know, it has with respect to. To the sameness issue. Is. And I cited to a number of different cases. A number of different definitions. And, you know, whether or not the legislature was. You know, Skilled and articulate in how it goes about its business. I think there's plenty of examples that most of you have jobs over because the legislature isn't always particularly clear about these things. And I got some smiles there. I know. But. You know, the rule of law is, is that we understand. And we give the. We've got the legislature met when it said, when it said, when it said. That we don't look to infer things into the statute that aren't in the statute. So what. You know, it has happened here. And, you know, when you look at. Where the corporate load deviates from the, all the historical. You know, cases is when it gets into this.  It gets into this idea of absurdity with respect to the outcome. Well, what makes that absurd? So the. The court below reasons that. The legislature must have intended to keep the 23 month rule. I'm sorry. I lost one of the justices. He's back. So the legislature must have. Intended to keep the 23 month rule in place. Well, I don't see how the legislature, when it passed this statute, subsequent to the election code. Would say we. You know, aren't going to construct this in a way that would have this 23 month rule applied each and every time. But even if it did. The application of 23 month rule is clearly not been reached. Because the referendums are different. And because they're different, you know, we don't have the sameness. That's necessary to invoke. You know, that particular 23 month rule. Then. And I, I, I had a little separate section with respect to. The word similar versus, and I apologize that my line spacing went to single for that one paragraph, but I'm pretty sure it was well below the. The page limitation. But the idea of similar and sameness are two very different things. And we can say that. And in fact, that is a good example. So. There's a criminal defendant that's set to be sentenced and he hasn't been sentenced now for. I want to say about a year, a year because of the COVID crisis. And his poor health now me. Make his sentencing. Not very material because. You know, his, his, his report date may never happen in his, in his lifetime. So when you don't think about dates and times. And then this little hypothetical example that I just gave to you, and it comes from a different case that I have. No time is always something that we look at as a. A definitive term that's necessary to how we analyze everything that we do as lawyers, everything that you do as judges. Time to involve the examination of. What date is the important date that something must occur upon. It is not the idea of sameness versus similarness. So is the outcome of the two. If they had both been approved similar. Yes. There'd be a disillusion. Is it the same? No, because this solution take different points in time. And that that's the critical. Issue. And so then if you look at. Where the, the court below. You know, looks and says, well, this, this has to be. Absurd because we never get to the 23 month rule. It's not absurd. Because the legislature clearly knew the 23 month rule and designed it. So that would never be the same. So the position of the appellant is, is that giving the legislature, the plain clear language of the statutes, applying it in the standards that we apply to hold. To look at any piece of legislation. We look at that. And I think in justice Scalia's book, a matter of interpretation, he goes to this at some length for about, well, most of the book. But. I think that. If we're going to start reading things into, and then having a similarity test. Then what you would have to fashion is something that would. It'd be a construct of the courts. To reach in, to determine what constitutes similar versus sameness. And I think that's a very critical. I think that's a very critical. A reason why I'm I'm here before you today. And that's, I guess, you know, I don't need to beat a drum horse. I'm sorry. You know, horse to death. But do you want me to discuss the mootness doctrine? Which was part of my brief. Okay. Council. Unless. There are questions justice Brennan or justice Jorgensen. Do you have a preference? Or any questions. Yes. I don't have any questions either. Justice Brennan. No, thank you. Okay. Pardon. I said, I'm sorry. Okay. I figured that would just speed things along. Your honor. All right. Thank you. All right. Good morning. May it please your honors. Thank you for this time. I hope you don't mind. I'm going to start just walking through a logical progression. Authority for the various statutes. Okay.  And this is the one that dictates the situation in this case. Article seven, section five. Of the Illinois constitution provides that townships may be consolidated or merged. And one or more may be dissolved. We want to prove by referendum in each township. And then section 11 of that article also states that. The townships may be consolidated or merged. And so, the proposals for actions authorized by this particular article. And which require referendum approval. Can be initiated and submitted by. The governing board of a unit of local government or by petition of electors in the manner provided by law. Therefore it's then important to look at both the Illinois township code. And the Illinois election code that details the procedures. And requirements to pursue a referendum question. On this issue of township dissolution. Section one slash 24 dash 15 of the township code. Provides that the board of trustees of any township located in McHenry County may submit a proposition to dissolve the township to the electors. In accordance with the general election law. So that clearly establishes that it's the township code together with the election code that dictate this. Situation. The initiation and submission and submission of all public questions to be voted on by electors of the state or any of its political subdivisions. Are the subject to the provisions of article 28. In the election code. In section five slash 28 dash seven of the code. It says that in any case in which article seven of the constitution authorizes. Any action to be taken by a unit of local government. Shall be initiated in accordance with this section. Further on in that section, it does state that the public question can be initiated either by a signed petition. Or by resolution from the governing body. And even more importantly, it says. Any referendum provided for in the section. May not be held more than once in any 23 month period.  a signed petition or by a resolution from the governing body. For the same proposition. So at issue, one of the issues in this case is. The township maintaining that the questions are not the same. The question that is at issue that. That the township wanted to be placed on the November. So the question that is at issue. Is that the township and road district property. And assets personnel obligations and liabilities transferred to McHenry county. It's critical. To note that that exact same question. The wording is exactly identical. I won't read it again. The only difference was the effective date was June 21st. Of 2020. In section. One slash 24 dash 20 dictates that dissolution cannot occur. Before 90 days after the election at which the question is voted on. So it. It's it's dictated. The data is dictated by the statute itself. So it's expected to have different effective dates because elections occur. On different days. To enable circumvention of this. And I think that's important. I think it's important. That the election code requirement. That questions authorized by article seven of the constitution. Be limited to ballot consideration by voters to only once in any 23 months period. By simply pointing to a different effective date. It could be one day difference. Renders the intent. Of section five slash 28 dash seven. And I think the concept is further supported by. The Illinois Supreme court in the 2019 case. Better government association. The officer office of special prosecutor for 32. Illinois decision six 38. The court was construing. The freedom of information act. It was proposed. By referring to the plain language of the statute. And how. Said that. The courts presume that in, in an acting legislation, the legislature does not intend absurdity. And I think to find that these questions are not the same, simply because they have a different effective date would lead to. Something that I would characterize as, as an absurdity. The township also maintains that the county clerk didn't have the authority to prevent. The nomination petitions from appearing on the ballot. And he relies on two cases in particular to support this argument, a 1914 case. And I don't know if I'm going to pronounce this correctly. DZV Dylan and also north of the hand call a second district case from 1998. And they both relate to the fact that the county clerk did not have the authority to prevent the nomination petitions from appearing on the ballot. Stating that the election authority has no obligation to print names on a ballot. If the nomination petitions are facially deficient. And he, so he said to the county clerk exceeded his authority by going beyond a facial analysis. But I think reliance on these cases is misplaced. They both relate only. To the fact that the county clerk did not have the authority to nominate. Petition. Not governing board resolutions. And in addition, the election code provision that establishes this apparent conformity authority. Section five flesh 10 dash eight relates only to candidate nominating petition. I'm just curious. Is there any mention of any similar provision? That's a directed at. Proposed public questions submitted by resolution from a governing body of a government reunion. I think the question. Counsel, the question for me is that. Where is the clerk's authority to go beyond the four corners of what is presented? To determine whether or not it should or should not be on the ballot. Well, I would point to a next section in the election code. That that gives the county clerk. Authority. Starting out though. Under five. One slash three, eight. The election authority does mean county clerk and that county clerk. Has the responsibility to print ballots for all elections, including referendum. So I have two arguments. The first is probably not as strong as the second. To determine the two public questions related to the McHenry township, the solution. That you should hear are identical, did not require significant investigation beyond a facial. Well, my point is any investigation. Where's the authority to go beyond the four corners, whether it's a full blown investigation. Or it's a little bit of investigation. Doesn't the clerk have to look at. Does this document. Conform with the statute as it appears. Without looking beyond the four corners. And that's really the crux of my question. Well, I would answer that in two ways. First of all, The apparent conformity issue in the statute is only directed. When you were talking about nominating petitions. It does not ever reference resolutions from governing bodies. I would then point to section five slash 28 dash five. Of the election code. And in that statute, it, it says that whenever an election authority, which in this case is the County clerk. Or the state board is in receipt of a certification for the submission of a public question at an election at which the public question may not be placed on the ballot. And in that statute, it says that when a public question is placed on the ballot, such election authority or board shall give notice of such prohibition by registered mail. And in the case of a certificate from a local election authority, which was the case here, it was from the township clerk. To such election authority who shall there upon notify the governing board, which adopted the initiating resolution. So this section provides specific authority and a procedure. But it's, it's giving notice who makes the decision. To give the notice. In other words, the content of the notice I get. They're obligated to send notice to whoever it was that was proposing the referendum. But where, who, who decides that the content is insufficient. And where's the authority for that? The authority is within that section of the statute. And it was very similar to the authority, for example, in this particular case where the the county clerk had to notify the township clerk that the that the question initially didn't meet the requirements for the wording in the question. And in fact, the township had no problem with complying with that revision that the, the county clerk had suggested needed to be made. And in fact, they complied immediately. Are you arguing that this is really a waiver issue then that because they accepted the notice from the clerk as to censoring the con the content that there's a waiver argument here? No, but I think it's very similar. It was very clear that the county clerk can simply look at the statute and the wording of the question as submitted and advise the governing body that the language doesn't meet the specification. And I think that's very similar to looking at the prohibition. The county clerk has the duty to prepare the ballot and knew instantly that the question as being proposed was identical to the ballot as he had prepared it eight months previously. I don't believe there was any investigation necessary. The wording was identical and this section 28 dash five says the election authority shall notify that it cannot be placed on the ballot. So are you saying, are you saying, excuse me? No, please. Okay. I don't know if my, if it's, if my voice is too gravelly and you can't understand, I won't ask the question, but doesn't, is your argument that because the clerk has authority over the ballots that the clerk is imbued with certain knowledge of the contents of all ballots and therefore, um, I guess my question is, how did the clerk's job here involve investigation beyond facial review? So in other words, if they, if the clerk knows what's in all the ballots, are you saying that he didn't look beyond the four corners or he did look beyond the four corners, but he has this imbued knowledge of what's in all the ballots. I believe it may be a combination in this particular situation. When you're talking about resolutions from governing boards of governmental entities, there is no provision in the statute for, for example, an objection hearing as there is with dominating positions. There is no provision for apparent conformity related to governing board from governmental units. Um, with resolution, it's a, it's a distinction in the statute. There is no provision for it. So ultimately the County clerk becomes essentially a gatekeeper for this in this particular situation because the statute is silent and only deals with petitions for nominating candidates and petitions for, um, resolutions to be placed on the ballot. Does never discuss resolutions from governing boards as we have in the instant case. Okay. Thank you. Justice Brennan. So Ms. Wyckoff, the article, article seven, um, has been there, you know, obviously since 1970, this scheme, uh, legislative scheme for, you know, placing these matters, uh, before the voters it's basically since 2019. Is that fair? I'm, I'm, I'm not sure I understand your question. I guess my question is the, the, the procedure that we're talking about, uh, for placing these referendums on the ballot, was that just set up by the ledger or enabled by the legislature starting in 2019 or did it, or was it before something there before that? Well, um, and I, I, I hope I'm correct on this. The, there's a very specific statute that we're talking about in the township code, um, that deals with just McHenry township that, um, yes, that is recent. However, before that, there were, there was authority in other parts of the statute for very similar. It's just that this new statute is specifically directed at McHenry County. And to your knowledge, these other statutes, and I thank you for that. Did they have this similar 23 month prohibition? Well, the, the 23 month prohibition comes from the, um, election code, um, which says that any public question that to be put on the ballot must comply with this section. So it would apply to yes, any public question that's being proposed to be put on the ballot. And because I have subject matter experts here, I just want to ask this question, even though it wasn't raised in briefs. And I recognize that article seven, either section five or section 11 provides for these referenda. But it doesn't have any timeframe prescription. Is there any concern that a statute that limits the application of the constitution is problematic? The, the only thing I can point to is that in the, um, in the article seven of the constitution, it does say that it shall be done as provided by law. Um, so I think that the constitution then does give some leeway to the legislature in terms of the dictates on how these procedures are going to happen. And it is interesting that the 23 months, this 23 month restriction applies to those, um, those referenda questions that are authorized by, um, by article seven and in article seven, those are major, um, uh,  And it's interesting that the legislature, for example, changes to governmental structure and how officials are going to be selected. So I can only assume that the intent there was that when these major issues are to be considered, they are, um, they are limited to only certain periods. It would be interesting if the legislature, for whatever reason, instead said only once every 10 years, instead of every 23 months, wouldn't be concerned constitutionally. But as I said, it's a little outside the scope and I thank you. And it may be directed at the election cycle, you know, a two year election cycle. Counsel, uh, your time is up. Uh, is there anything, uh, you'd like to say in closing? No, I, um, I just, uh, would repeat that, um, mandamus was not proper in this case. The clerk, uh, not only did not have a duty to keep the question, uh, or to, to not put the question on the ballot, he had a duty to keep the question off the ballot. So, um, mandamus was not proper. And I believe that the clerk was, was correct in dismissing the mandamus. Thank you, Mr. Hanlon. Yes. Um, thank you very much again. Uh, first of all, uh, one of the things that I observed, as it was listening to my learned colleague, uh, uh, articulator position was that she used the word identical, uh, on numerous occasions during her bag. They have a little tally sheet here, uh, uh, as she used that word identical, um, uh, but in the context that it was used was to describe the similarity. Um, uh, also I wanted to address justice Brennan's, uh, question with respect to limits of the constitution. Uh, I don't think that statute limits, uh, the constitutional, uh, uh, or the constitution of the state of Illinois, uh, rather, uh, you know, it's, uh, uh, uh, uh, the constitution authorizes, uh, this very type of statute. So I think they're in harmony. Um, uh, one of the things that, uh, this, we look at with this 23 month rule is, you know, if we look at the reason why the legislature adopted it, I believe that the whole rationale that the legislature had for adopting it was that they want the same people coming back, the same question, you know, repeatedly in this particular case, you had some voters that came with the question initially, and then subsequent to that, you had, uh, the township board, uh, placing this question for the ballot. So I think when you look at the fundamental and that would be the only reason I can think of that, the legislature would even have for the 23 month prohibition, because if there's a constitutional restriction, um, here by limiting the number of times that someone can petition government for the very structure by how they are self-governed. Uh, I think that that 23 months rule, you know, might actually infringe upon the constitutional provision, uh, uh, with respect to, uh, allowing the, uh, the people to have self-governance as it relates to the application of, you know, the, uh, the existence of the townships. And so, well, um, uh, you know, I appreciate the comments that, and my learning colleague had, I believe that she's incorrect because there is no authority statutorily that grants Mr. Ontario. And Joe is a very good friend of mine. Uh, since this case started, I have not had lunch with him, but we used to go to lunch all the time until it's been over. Um, but, uh, the, uh, the thing of it is, as I look at this, I say, if there's no statutory power granted to him, you know, and this goes to the, you know, all the way back to judge Dillon's rule that he came up with in Iowa saying, Hey, you know, the government gives and grants to elected officials, certain powers from them in a period of time, nowhere in there, does it allow Mr. Terrio to wear a black robe? Uh, Mr. Terrio is not a judge. He is not, uh, empowered to interpret statutes, uh, for the purposes of his liking. What, whether, uh, um, uh, and I think that the ultimate issue here is does he have any power to do that? And he doesn't have any power to do it. Uh, does he have the obligation to place a question on the ballot? And I believe that's clear. And so I think that the mandamus is clearly warranted and, uh, that's why I brought the action in under mandamus. And, uh, I would ask that this court, uh, give, uh, it's learning consideration to the arguments that have been made here and in our briefs, and then, uh, issue an order, which, uh, reverses the decision of the circuit court. Counsel, um, your, uh, opposing counsel pointed out that there is no provision in this statute that, um, would articulate a process for objections as there is with nominating petitions. And then in the absence of that, if by default falls on the local election entity, which in effect here is the County clerk's office, because they are also, um, the first level, I guess, of election review, ballot review. May I speak to that? Of course. That's okay. As I articulated within my opening brief, um, the voters have number of alternatives that are available to them. They can vote on office. Those people that sit on the town's report, they can, uh, you know, go to the ballot, you know, and vote as well. But when we talk about review, uh, you know, at, at this point, at what point in time do we review a lot of loss? Well, usually when there's a problem, uh, when, uh, there, the law is applied to somebody in some way that they feel is, is, uh, wrong. Uh, and then they file a petition with the government. So for instance, uh, if, uh, someone is charged with a crime and it's the crime of, you know, being silly, well, you know, we would all, you know, say, well, that wouldn't be a proper, you know, you know, thing for the legislature to enter into, but it might be under certain circumstances, uh, such as our disorderly conduct statute. However, um, not everything in our law system has a provision for voters to intervene, uh, and object to things within the scope of, uh, the, uh, the process of placing, you know, uh, things into law. So, you know, they have a public body that's empowered by the, the, uh, the electorate to enact ordinances, to seek a dissolution and they empowered them to seek the dissolution of that entity at the point in time that they elected them. Now, obviously when John, you know, the public goes to the polls, he doesn't say to himself, gee, I'm going to empower, you know, person X with the duties and responsibilities of ascertaining whether or not, uh, to, uh, you know, pass an ordinance or to pass it. They know that they're electing them to hold a position that position by statute carries with its authority. Right. But here's the bottom line council. I appreciate where you're going, but here's the point. If the statute doesn't allow an objector from the outside, does it by default fall into the clerk's authority? No, the clerk doesn't have any authority. And just because not affirmatively in the statute, the clerk does not have the authority. Right. So let's assume for the sake of argument, the clerk looks at this and just cause he's got a good memory remembers that boy, something really similar, identical, same, whatever was on the ballot before and decides that it shouldn't be. Should it then be the clerk's burden to take it to the circuit court for a decision? Well, I don't think it would be his burden. It would be his, I think his privilege or his right as the clerk to say, Hey, I don't know what to do here. But he didn't do that. He acted unilaterally. And because he acted unilaterally, he didn't have the power, you know, to do that. So why, why doesn't 28 five give the clerk the power to do this? That's our 23 months rule, right? No, it's the obligation on the part of the clerk to notify. His obligation is to, to notify, not to, to decide two very different things. And you know, when the, the, how does he, how does the clerk notify without doing some kind of analysis? Well, the problem lies in the question that you asked judge because it requires an analysis. And if it requires an analysis, he's gone beyond the four corners. And once we have clerks making analysis to determine whether or not something is, or, or shooter should not be on the ballot, he's ceasing to be a clerk. And he's, he's donning the robe to judge the particular question, which didn't have the power to do. So in the Dylan case, one could look at this and say, it's on all fours and on your side, but in Dylan specifically they do. And I, I just want to ask about this. They have certain language. It says, but that the legislature had not seen fit to make any provision for the determination of that question by the clerk. I'm wondering whether in this case, the legislature did make such a provision such as does not control. I'd like to know where it is because if the legislature granted that it has not been cited by my opposing council as a grant of authority, you know, most positions, most statutes, if you look through the township statute, the highway code, each position there's a grant of authority, the things that the elected officials can do. There's no grant of authority there. So you've got to take it past an implied step, you know, to go, you know, much further than that, because it is clear from, you know, the legions of precedent and authority is that we're looking, the clerk's supposed to look in the four corners of the instrument, ascertain whether or not, you know, it's facially compliant. Once he goes beyond that, he starts doing some kind of analysis. He's stopping the clerk. He started being a judge. Thank you. Justice Jorgensen, any further questions or justice? Justice Brennan. All right. Counsel, thank you both for your arguments this morning. The court will take them under advisement and render a decision in due course at this time, the proceedings in this case have ended. And Mr. Kaplan, if you would stop the recording, please. Thank you again, counsel. Thank you. And thank you to my foes and counsel.